Nathan Brown (SBN 033482)
15100 N 78th Way Suite 203
BROWN PATENT LAW
Scottsdale, AZ 85260
Phone: 602-529-3474
Email: Nathan.Brown@BrownPatentLaw.com

[Additional counsel appearing on signature block]

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Darren MacDonald**, individually on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**R&H Industries, LLC** an Arizona company,<br><br>    Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Darren MacDonald ("MacDonald" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant R&H Industries, LLC doing business as Elite Solar Concepts, LLC ("Elite Solar" or "Defendant") to stop Elite Solar from repeatedly violating the Telephone Consumer Protection Act by making unsolicited, autodialed phone calls to consumers' cell phone and to phone numbers that are registered on the National Do Not Call registry ("DNC") and to obtain monetary relief for all persons injured by Elite Solar's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Darren MacDonald is a resident of Scottsdale, Arizona.

1

2.      Defendant R&H Industries, LLC doing business as Elite Solar Concepts, LLC is an Arizona limited liability company located in Maricopa County, Arizona. Defendant does business within this District and throughout the U.S.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's wrongful conduct was directed from and to Plaintiff in this District.

## TCPA BACKGROUND

5.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7.      While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com last visited Apr. 9, 2019).

14.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## FACTUAL ALLEGATIONS

17.     Elite Solar connects consumers with partner companies that provide solar power installations in the homes of the consumers.

18.     Part of Elite Solar's marketing plan includes placing calls *en masse* to consumers in order to solicit sales of solar installation systems.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4

19. The calls are placed using an autodialer – equipment with the capacity to store and generate numbers and dial them without human intervention – without first obtaining prior express written consent as required.

20. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

21. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers such as those of Plaintiff.

22. To make matters worse, Elite Solar places calls to phone numbers that are registered on the DNC, which the TCPA also requires prior express written consent to call.

23. In job postings for call center agents, Elite Solar is open about its use of telemarketing to generate business and its use of automated systems:

> **Call Center Representative - Full Time**
>
> Arizona | Scottsdale, AZ, USA
>
> Elite Solar Concepts serves the valley with residential and commercial solar solutions. This position is based out of our **Downtown Phoenix** location. Our goal is to expand into 4 states and have a total of 10 locations by the end of 2018.
>
> In this role, the Call Center Representative will be responsible for meeting and exceeding quota, driving performance and operating with integrity throughout customer interactions. The Call Center Representative will be setting appointments in assigned territories for our outside sales teams nationwide, handling inbound calls from existing clientele and <u>growing our client base by means of telemarketing</u>.
>
> **Call Center Representative Responsibilities:**
>
> - Schedule appointments for our outside sales team nationwide
> - Answer inbound customer service questions from existing clientele
> - Follow guidelines regarding goals, attendance, policies and procedures
> - Ability to work in an above average paced environment with minimal supervision
> - Record keeping skills and attention to detail a must
> - Work diligently and consistently through 8-hour day
> - Use computers, <u>automated systems</u> and a variety of company software [3]

24. Job postings also reference the cold calling that Elite Solar agents engage in:

> **Skills**
>
> sales process, self-driven, marketing, customer retention, team leadership, customer experience, direct sales, customer satisfaction, sales management, account management, sales operations, sales presentations, <u>cold calling</u>, retail sales, team leader [4]

**PLAINTIFF MACDONALD RECEIVED 2 UNSOLICITED AUTODIALED CALLS TO HIS CELL PHONE FROM DEFENDANT ELITE SOLAR, DESITE HAVING HIS PHONE NUMBER REGISTERED ON THE DNC**

---

[3] https://hire.withgoogle.com/public/jobs/elitesolarconceptscom/view/P_AAAAAADAADsIeG1lhPy5Gm

[4] https://www.internships.com/posting/bug_38709690398

6

25. Plaintiff MacDonald registered his cell phone number on the DNC on August 27, 2003. Plaintiff's cell phone number is not associated with a business and is used like a home phone.

26. On March 17, 2020 at 5:32 PM, Plaintiff MacDonald received an autodialed call from Defendant using phone number 602-904-0857 on his cell phone. When Plaintiff answered this call, he noticed a pause of silence before a live agent came on the line, indicating the use of an autodialer.

27. The purpose of the call was to sell a solar power system to Plaintiff. When Plaintiff questioned who was calling him, he was told that the company name is Elite Solar Concepts.

28. Plaintiff questioned why he was receiving a call about getting a solar power system, as this is not something he was looking to purchase. The agent responded that Plaintiff was looking to get solar power in 2019, which is not correct.

29. Plaintiff made it clear to the agent that he was not interested in receiving additional calls.

30. Despite this stop request, Plaintiff received a second call to his cell phone from Defendant just 6 minutes after the first call. This second call was placed at 5:38 PM on March 17, 2020. As with the first call, this call began with a noticeable pause, again indicating the use of an autodialer.

31. This second agent claimed that they were not aware of the first call Plaintiff received, and confirmed they were calling from Elite Solar Concepts. Plaintiff insisted on speaking to a manager and was connected to somebody who did identify as being a manager.

Plaintiff complained about receiving illegal telemarketing calls, as his cell phone number is registered on the DNC, but the manager hung up the phone.

32. Plaintiff never consented to receiving solicitation calls from Defendant.

33. Plaintiff was not looking to get a solar power system for his home.

34. The unauthorized telephone calls made by Defendant, as alleged herein, have harmed Plaintiff MacDonald in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

35. Seeking redress for these injuries, Plaintiff MacDonald, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed phone calls to cellular telephones, and which prohibits more than one call to a phone number registered on the DNC.

## CLASS ALLEGATIONS

36. Plaintiff MacDonald brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called, (2) on the person's cellular telephone, (3) using similar equipment used to call Plaintiff, and (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call, or (b) it did not obtain prior express written consent.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on his/her residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained

8

prior express written consent to call, or (b) it did not obtain prior express written consent.

37. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff MacDonald anticipates the need to amend the Class definitions following appropriate discovery.

38. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff MacDonald and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant used an automatic telephone dialing system to place phone calls to Plaintiff and the members of the Autodialed No Consent Class;

(b) whether Defendant placed more than one phone call to Plaintiff and the members of the Do Not Call Registry Class;

(c) whether Defendant made these calls without prior express written consent; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Adequate Representation**: Plaintiff MacDonald will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff MacDonald has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff MacDonald and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff MacDonald nor his counsel have any interests adverse to the Classes.

41. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.

42. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Autodialed No Consent Class)**

43. Plaintiff MacDonald repeats and reallege paragraphs 1 through 42 of this Complaint and incorporates them by reference.

44. Defendant made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff MacDonald and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

45. These solicitation telephone calls were made *en masse* without the prior express written consent of the Plaintiff MacDonald and the other members of the Autodialed No Consent Class.

46. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff MacDonald and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

47. Plaintiff repeats and realleges the paragraphs 1 through 42 of this Complaint and incorporates them by reference herein.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

51. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

52. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by Defendant, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and are entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MacDonald, individually and on behalf of the Classes, prays for the following relief:

53. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff MacDonald as the representative of the Classes; and appointing his attorneys as Class Counsel;

54. An award of actual and/or statutory damages and costs;

55. An order declaring that Defendant's actions, as set out above, violate the TCPA;

56. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

57. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff MacDonald requests a jury trial.

DATED this 6th day of April, 2020.

/s/ Nathan Brown
Nathan Brown (SBN 033482)
BROWN PATENT LAW
15100 N 78th Way Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
Email: Nathan.Brown@BrownPatentLaw.com

Rachel Kaufman*
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 773-6641

*Attorneys for Plaintiff and the putative Class*

*Pro Hac Vice Motion forthcoming*